**POMERANTZ LLP**
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue
Suite 1558
Los Angeles, CA 90024
Telephone: (310) 405-7190
E-mail: jpafiti@pomlaw.com

**Attorneys for Plaintiff**
*- additional counsel on signature page –*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IMMANUEL LAKE, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> ZOGENIX, INC., STEPHEN J. FARR, and MICHAEL P. SMITH, <br><br> Defendants. | **Case No.** <br><br> **CLASS ACTION COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff Immanuel Lake ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Zogenix, Inc. ("Zogenix" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet.  Plaintiff believes that substantial evidentiary support will exist for the allegations set forth

herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.    This is a federal securities class action on behalf of a class consisting of all persons other than defendants who purchased or otherwise acquired Zogenix's securities between February 6, 2019 through April 8, 2019, both dates inclusive (the "Class Period"), seeking to recover damages caused by defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.    Zogenix was founded in 2006 and is headquartered in Emeryville, California.    The Company was formerly known as SJ2 Therapeutics, Inc. and changed its name to Zogenix, Inc. in August 2006.

3.    Zogenix is a pharmaceutical company that develops and commercializes therapies for the treatment of transformative central nervous system disorders in the United States.    Its lead product candidate is ZX008, which is also known commercially by its trademarked name "FINTEPLA." FINTEPLA is a low-dose fenfluramine that is in Phase III clinical trials for the treatment of seizures associated with Dravet syndrome.

4.    On February 6, 2019, Zogenix announced the submission of its New Drug Application ("NDA") to the U.S. Food and Drug Administration ("FDA") for FINTEPLA.

5.    Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies.    Specifically, Defendants made false and/or misleading statements and/or failed to disclose that:  (i) Zogenix's NDA for FINTEPLA contained inadequate non-clinical data and an incorrect version of a clinical dataset; (ii) consequently, Zogenix's NDA for FINTEPLA was unlikely to gain FDA approval; and (iii) as a result, the Company's public statements were materially false and misleading at all relevant times.

6.      On April 8, 2019, Zogenix announced that the Company had received a Refusal To File ("RTF") letter from the FDA stating that the Company's NDA for FINTEPLA was not sufficiently complete to permit a substantive review.  Zogenix advised investors that "the FDA determined that the NDA . . . was not sufficiently completed to permit a substantive review . . . . [F]irst, certain non-clinical studies were not submitted to allow assessment of the chronic administration of fenfluramine; and, second, the application contained an incorrect version of a clinical dataset, which prevented the completion of the review process that is necessary to support the filing of the NDA."

7.      On this news, Zogenix's stock price fell $11.89 per share, or nearly 23%, to close at $39.96 per share on April 9, 2019.

8.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

9.      The claims asserted herein arise under and pursuant to §§ 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

10.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

11.      Venue is proper in this Judicial District pursuant to § 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b).  Zogenix is headquartered in this District, Defendants conduct business in this District, and a significant portion of Defendants' actions took place within this District.

12.      In connection with the acts, conduct and other wrongs alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including

but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

**PARTIES**

13.     Plaintiff, as set forth in the attached Certification, acquired Zogenix securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

14.     Defendant Zogenix is a Delaware corporation with its principal executive offices located at 5858 Horton Street, Suite 455, Emeryville, California.  During the Class Period, Zogenix securities traded in an efficient market on The Nasdaq Global Market ("NASDAQ") under the symbol "ZGNX."

15.     Defendant Stephen J. Farr ("Farr") has served as Zogenix's Chief Executive Officer ("CEO") at all relevant times.

16.     Defendant Michael P. Smith ("Smith") has served as Zogenix's Chief Financial Officer ("CFO") at all relevant times.

17.     Defendants Farr and Smith are sometimes referred to herein collectively as the "Individual Defendants."

18.     The Individual Defendants possessed the power and authority to control the contents of Zogenix's SEC filings, press releases, and other market communications.  The Individual Defendants were provided with copies of the Company's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected.  Because of their positions with the Company, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading.  The Individual Defendants are liable for the false statements and omissions pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

19.     Zogenix was founded in 2006 and is headquartered in Emeryville, California.   The Company was formerly known as SJ2 Therapeutics, Inc. and changed its name to Zogenix, Inc. in August 2006.

20.     Zogenix is a pharmaceutical company that develops and commercializes therapies for the treatment of transformative central nervous system disorders in the United States.   Its lead product candidate is ZX008, which is also known commercially by its trademarked name "FINTEPLA." FINTEPLA is a low-dose fenfluramine that is in Phase III clinical trials for the treatment of seizures associated with Dravet syndrome.

### Materially False and Misleading Statements Issued During the Class Period

21.     The Class Period begins on February 6, 2019, when Zogenix issued a press release, entitled "Zogenix Submits New Drug Application to U.S. Food & Drug Administration and Marketing Authorization Application to European Medicines Agency for FINTEPLA® for the Treatment of Dravet Syndrome".   The press release touted the Company's "two pivotal Phase 3 trials in Dravet syndrome and an interim analysis from an ongoing open-label extension study" on which the NDA and MMA were based.

22.     Commenting on the Company's regulatory applications, Defendant Farr stated in the press release: "Our concurrent submissions to the FDA and EMA are the culmination of four years' effort for Zogenix, our investigators, and the families who participated in the ZX008 clinical trial program. . . . We are honored to have partnered with such dedicated people to develop a potential new treatment for this rare and often catastrophic disease and look forward to working closely with the FDA and EMA during the review process."

23.     On February 28, 2019, Zogenix filed its annual report for the fiscal year ended December 31, 2018 on Form 10-K with SEC (the "2018 10-K"). The 2018 10-K discussed the "FDA Approval Process" and acknowledged that "[t]he pre-clinical and clinical testing and approval process requires substantial time, effort and financial resources[.]"

24.     The 2018 10-K further elaborated on the FDA's "Expedited Development and Review Programs", which allows the FDA to "consider for review sections of the NDA on a rolling basis before the complete application is submitted, if the sponsor provides a schedule for the submission of the sections of the NDA[.]" Notably, "[o]btaining a Fast Track designation does not change the standards for product approval, but may expedite the development or approval process."

25.     Specifically discussing the Company's NDA announced on February 6, 2019, the 2018 10-K stated that the application was "based on data from Study 1 and Study 1504 in Dravet syndrome and the interim analysis from Study 1503." The 2018 10-K detailed the studies upon which the Company relied in its NDA, stating in relevant part:

> We initiated our Phase 3 clinical trials for Fintepla for the treatment of seizures associated with Dravet syndrome in North America (Study 1501) in January 2016 and in Europe and Australia in June 2016 (Study 1502). Study 1501 and Study 1502 are each identical randomized, double-blind placebo-controlled studies of Fintepla as adjunctive therapy for patients with uncontrolled seizures who have Dravet syndrome. In January 2017, we announced our plan to report top-line results from Study 1501 and Study 1502 via a prospective merged study analysis approach whereby top-line results from the first approximately 120 subjects randomized into either Study 1501 or 1502 would have their study results analyzed and be reported initially as "Study 1". ***In April 2017, we completed enrollment of Study 1 and, in September 2017, we announced positive top-line results for the 119 patients included in the Study 1 Phase 3 trial. The Study 1 trial met its primary objective*** of demonstrating that Fintepla, at a dose of 0.8 mg/kg/day (30mg/day maximum), is superior to placebo as adjunctive therapy in the treatment of Dravet syndrome in children and young adults based on change in the frequency of convulsive seizures between the 6-week baseline observation period and the 14-week treatment period ($p<0.001$). In the trial, Fintepla at a dose of 0.8 mg/kg/day also demonstrated statistically significant improvements versus placebo in all key secondary measures, including the proportion of patients with clinically meaningful reductions in seizure frequency (50% or greater) and longest

seizure-free interval. The same analyses comparing a 0.2 mg/kg/day Fintepla dose versus placebo also demonstrated statistically significant improvement compared with placebo. Fintepla was generally well tolerated without any signs or symptoms of valvulopathy or pulmonary hypertension.

In September 2016, we initiated Cohort 1 of Study 1504 that investigated the pharmacokinetic profile and safety of Fintepla when co-administered with the stiripentol regimen (stiripentol, valproate and/or clobazam). Based on the results of the Cohort 1 pharmacokinetic and safety portion of the trial, in February 2017 we initiated the Cohort 2 safety and efficacy portion of Study 1504 utilizing a dose of Fintepla 0.5mg/kg/day (20mg/day maximum). Study 1504 Cohort 2, a two-arm study, compared Fintepla versus placebo across the titration and 12-week maintenance periods at multiple sites located in France, the Netherlands, United States, Canada, Germany, the United Kingdom and Spain. In January 2018, we announced patient enrollment was complete at 87 patients, with 43 patients randomized into the Fintepla-arm and 44 patients randomized to the placebo arm. ***In July 2018, we reported positive top-line results from Cohort 2 of Study 1504. The study results, which are consistent with those reported in Study 1, successfully met the primary objective*** of demonstrating that Fintepla, at a dose of 0.5 mg/kg/day, when co-administered with stiripentol regimen (stiripentol, valproate and/or clobazam), was superior to placebo as adjunctive therapy in the treatment of Dravet syndrome in children and young adults based on change in the frequency of convulsive seizures between the 6-week baseline observation period and the 15-week treatment period (p<0.001). In the trial, Fintepla at a dose of 0.5 mg/kg/day also demonstrated statistically significant improvements versus placebo in all key secondary measures, the proportion of patients with clinically meaningful reductions in seizure frequency (50% or greater) and longest seizure-free interval. Fintepla was generally well-tolerated in this study, with the adverse events consistent with those observed in Study 1 and the known safety profile of fenfluramine without any signs or symptoms of valvular heart disease (valvulopathy) or pulmonary hypertension.

Upon completion of our Fintepla Phase 3 trials, eligible patients were permitted to enroll in an ongoing open-label extension (OLE) trial to study the long-term safety and effectiveness of Fintepla (Study 1503). In December 2018, we presented interim data from Study 1503 regarding the effectiveness and overall safety of Fintepla observed in the study, including the long-term cardiovascular assessments and findings at the 72nd Annual Meeting of the American Epilepsy Society (AES). A total of 232 patients from Study 1503 were included in the interim analysis of the OLE trial. As of March 13, 2018, the interim cutoff date, the median duration of treatment with Fintepla was 256 days and the range was 58-634 days (equivalent to 161 patient-years of exposure to Fintepla). In this interim analysis population of 232 patients, a total of 22 (9.5%) patients had discontinued treatment for the following reasons: lack of efficacy (16), subject withdrawal (2), adverse event (1), Sudden Unexpected Death in Epilepsy

(SUDEP) (1), physician decision (1), and withdrawal by caregiver (1). Approximately 90% of patients remained in the study at the time of the interim analysis. The median percent reduction in monthly convulsive seizure frequency over the entire OLE treatment period was 66.8% (compared with baseline frequency established in the core Phase 3 studies). Over the same period, 64.4% of children and young adults showed a >50% reduction in convulsive seizure frequency and 41.2% showed a >75% reduction.

The occurrence of adverse events was consistent with the Phase 3 placebo-controlled studies. The most common adverse events occurring in more than 10% of children and young adults were pyrexia (22%), nasopharyngitis (20%), decreased appetite (16%), influenza (12%), diarrhea (11%), and upper respiratory tract infection (10%). A total of 13.4% of children lost >7% body weight at some point during the trial; in 42% of those children weight loss abated during the period covered by the interim analysis. Over the course of the OLE treatment period, one patient died from SUDEP that was deemed unrelated to Fintepla. A total of 703 color doppler echocardiograms were performed to assess cardiovascular health at baseline, week 4 or 6, and then every 3 months during the OLE trial. No patient developed valvular heart disease (valvulopathy) or pulmonary arterial hypertension at any time after daily treatment with Fintepla.

(Emphases added.)

26.    On February 28, 2019, Zogenix also hosted a conference call with investors and analysts to discuss the Company's financial and operating results for the fourth quarter of 2018.  On that call, Defendants Farr and Smith discussed the Company's "landmark" year, which included the "highly positive results from [Zogenix's] second global phase 3 trial of [its] lead product candidate, ZX008 or FINTEPLA[.]"

27.    Defendant Farr reiterated that "[t]he results of this trial were consistent and supportive of the outcomes reported from [the Company's] first phase 3 study and position the company to advance the preparation of NDA and MAA submissions in pursuit of our first indication of Dravet syndrome." Defendant Farr elaborated on the NDA, stating in relevant part:

The regulatory applications in United States and Europe are based on data from the two pivotal phase 3 trials in Dravet syndrome that I mentioned earlier and an interim analysis from an ongoing open label extension study, Study 1503, which included 232 patients treated for up to two years. Both of the pivotal trials met their primary endpoints and all key secondary

measures with high statistical significance. ZX008 rated all test doses resulted in rapid, clinically meaningful and durable reductions in convulsive seizures when added to patients' anti-epileptic treatments. This robust reduction in convulsive seizures was also sustained in the long-term open label study, which as I noted includes patients on therapy for now up to two years.

ZX008 was shown to be safe and well-tolerated in the Dravet clinical program. No serious safety signals were observed and no new or unexpected tolerability or safety findings were identified. Importantly, an intensive prospective cardiovascular monitoring program shows that no patient developed valvular heart disease or primary hypertension at any time during study participation. Some of these data represented at the American Epilepsy Society or AES Annual Meeting, which took place in December of last year.

We are now very excited to be in a position to ramp up our commercial preparations for FINTEPLA. We intend to market FINTEPLA in United States and Europe through our own commercial teams.

28.    Moreover, Defendant Farr discussed the regulatory approval process for the NDA, stating in relevant part: "We expect to shift from the FDA in regards to the filing status of our NDA submission in the next several weeks. If the FDA grants priority review for contemporary NDA, we would anticipate a PDUFA target date in the third quarter of this year."

29.    The statements referenced in ¶¶ 21-28 were materially false and misleading because defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that:  (i) Zogenix's NDA for FINTEPLA contained inadequate non-clinical data and an incorrect version of a clinical dataset; (ii) consequently, Zogenix's NDA for FINTEPLA was unlikely to gain FDA approval; and (iii) as a result, the Company's public statements were materially false and misleading at all relevant times.

## The Truth Begins to Emerge

30.    On April 8, 2019, Zogenix issued a press release announcing that the Company had received an RTF letter from the FDA stating that the Company's NDA for FINTEPLA was not sufficiently complete to permit a substantive review.

31.    The press release disclosed that "the FDA determined that the NDA, submitted on February 5, 2019, was not sufficiently complete to permit a substantive review."  The Company disclosed two reasons cited by the FDA for the RTF decision: "first, certain non-clinical studies were not submitted to allow assessment of the chronic administration of fenfluramine; and, second, the application contained an incorrect version of a clinical dataset, which prevented the completion of the review process that is necessary to support the filing of the NDA."  The press release noted that "[t]he FDA has not requested or recommended additional clinical efficacy or safety studies."

32.    That evening, on April 8, 2019, the Company held a conference call with investors and analysts to discuss the RTF letter. *MarketWatch* reported that on the conference call, Defendant Farr stated that Zogenix had submitted historical studies on fenfluramine as part of its NDA rather than conducting its own non-clinical toxicology studies, as the FDA desired. Defendant Farr then estimated that if required to do so, it would take Zogenix 12 to 15 months to carry out its own studies.

33.    Market analysts were quick to note the significance of Zogenix's disclosures. For example, a market analyst published an article on the financial news website *The Motley Fool*, dated April 9, 2019, that concluded "the submission of a wrong data set is cause for concern. Zogenix basically committed an unforced error that could prove extremely costly in terms of future sales in the United States—especially with [ZX008's chief competitor drug candidate] Epidiolex's commercial launch off to a blistering start." The analyst characterized the Company's stock as a "falling knife," and warned that "this regulatory misstep will undoubtedly allow Epidiolex to solidify its position in the marketplace."

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Similarly, an analyst for Stifel Financial Corp. called the RTF letter "disconcerting, somewhat bizzare, and reason enough to push back Fintepla U.S. revenues to 2021[.]"

34.    On this news, Zogenix's stock price fell $11.89 per share, or nearly 23%, to close at $39.96 per share on April 9, 2019.

35.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

36.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Zogenix securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures.  Excluded from the Class are defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

37.    The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Zogenix securities were actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Zogenix or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

38.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

39.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

40.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by defendants' acts as alleged herein;

- whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Zogenix;

- whether the Individual Defendants caused Zogenix to issue false and misleading financial statements during the Class Period;

- whether defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Zogenix securities during the Class Period were artificially inflated because of the defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

41.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

42.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Zogenix securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Zogenix securities between the time the defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

43.    Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

44.    Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## <u>COUNT I</u>

### (Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)

45.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

46.    This Count is asserted against defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

47.    During the Class Period, defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in

order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Zogenix securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Zogenix securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

48.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Zogenix securities.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Zogenix's finances and business prospects.

49.     By virtue of their positions at Zogenix, defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to defendants.  Said acts and omissions of defendants were committed willfully or with reckless disregard for the truth.  In addition, each defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

50.     Information showing that defendants acted knowingly or with reckless disregard for the truth is peculiarly within defendants' knowledge and control.  As the senior managers and/or directors of Zogenix, the Individual Defendants had knowledge of the details of Zogenix's internal affairs.

51.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Zogenix.  As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Zogenix's businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Zogenix securities was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning Zogenix's business and financial condition which were concealed by defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Zogenix securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by defendants, and were damaged thereby.

52.     During the Class Period, Zogenix securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Zogenix securities at prices artificially inflated by defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Zogenix securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of Zogenix securities

declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

53.    By reason of the conduct alleged herein, defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

54.    As a direct and proximate result of defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against The Individual Defendants)**

55.    Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

56.    During the Class Period, the Individual Defendants participated in the operation and management of Zogenix, and conducted and participated, directly and indirectly, in the conduct of Zogenix's business affairs.  Because of their senior positions, they knew the adverse non-public information about Zogenix's misstatement of income and expenses and false financial statements.

57.    As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Zogenix's financial condition and results of operations, and to correct promptly any public statements issued by Zogenix which had become materially false or misleading.

58.    Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Zogenix disseminated in the marketplace during the Class Period concerning Zogenix's results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and

authority to cause Zogenix to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Zogenix within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Zogenix securities.

59.    Each of the Individual Defendants, therefore, acted as a controlling person of Zogenix. By reason of their senior management positions and/or being directors of Zogenix, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Zogenix to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of Zogenix and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

60.    By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Zogenix.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.    Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.    Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.    Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.    Awarding such other and further relief as this Court may deem just and proper.

## **DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury.

Dated: April 12, 2019

Respectfully submitted,

**POMERANTZ LLP**

*/s/ Jennifer Pafiti*

Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue
15th Floor
Telephone: (310) 405-7190
Email: jpafiti@pomlaw.com

**POMERANTZ LLP**
Jeremy A. Lieberman
J. Alexander Hood II
Jonathan Lindenfeld
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100
Facsimile:  (212) 661-8665
Email:  jalieberman@pomlaw.com
            ahood@pomlaw.com
            jlindenfeld@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone:  (312) 377-1181
Facsimile:  (312) 377-1184
Email:  pdahlstrom@pomlaw.com

*Attorneys for Plaintiff*

## CERTIFICATION PURSUANT
## TO FEDERAL SECURITIES LAWS

1.    I, *Immanuel Lake*                                  , make this

declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section

21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities

Litigation Reform Act of 1995.

2. I have reviewed a Complaint against Zogenix, Inc. ("Zogenix" or the "Company"), and authorize

the filing of a comparable complaint on my behalf.

3. I did not purchase or acquire Zogenix securities at the direction of plaintiffs counsel, or in order to

participate in any private action arising under the Securities Act or Exchange Act.

4.    I am willing to serve as a representative party on behalf of a Class of investors who purchased or

acquired Zogenix securities during the class period, including providing testimony at deposition and trial, if

necessary. I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5. To the best of my current knowledge, the attached sheet lists all of my transactions in Zogenix

securities during the Class Period as specified in the Complaint.

6. During the three-year period preceding the date on which this Certification is signed, I have not

sought to serve as a representative party on behalf of a class under the federal securities laws.

7.    I agree not to accept any payment for serving as a representative party on behalf of the class as set

forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses

directly relating to the representation of the class as ordered or approved by the Court.

8.  I declare under penalty of perjury that the foregoing is true and correct.


Executed  4 / 10 / 2019
                    **(Date)**


                                           **(Signature)**

                           Immanuel Lake
                                **(Type or Print Name)**

**Zogenix, Inc. (ZGNX)**                                                          **Lake, Immanuel**

### List of Purchases and Sales

| Date | Purchase or Sale | Number of Shares/Unit | Price Per Share/Unit |
|------|------------------|-----------------------|----------------------|
| 3/4/2019 | Purchase | 7 | $53.9500 |
| 3/4/2019 | Purchase | 1 | $52.2400 |
| 3/6/2019 | Purchase | 2 | $52.5600 |