LATHAM & WATKINS LLP
Colleen C. Smith (Bar No. 231216)
  *Colleen.Smith@lw.com*
Melanie Grindle (Bar No. 311047)
  *Melanie.Grindle@lw.com*
12670 High Bluff Drive
San Diego, CA 92130
Telephone:  +1.858.523.5400
Facsimile:  +1.858.523.5450

Michele D. Johnson (Bar No. 198298)
  *Michele.Johnson@lw.com*
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626-1925
Telephone:  +1.714.540.1235
Facsimile:  +1.714.755.8290

Meryn Grant (Bar No. 291315)
  *Meryn.Grant@lw.com*
355 South Grand Avenue, Suite 100
Los Angeles, CA 90071-1560
Telephone:  +1.213.485.1234
Facsimile:  +1.213.891.8763

*Attorneys for Zogenix, Inc., Stephen J. Farr and Michael P. Smith*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IMMANUEL LAKE, Individually and on Behalf of All Others Similarly Situated<br><br>Plaintiff,<br><br>vs.<br><br>ZOGENIX, INC., STEPHEN J. FARR, and MICHAEL P. SMITH<br><br>Defendants. | CASE NO. 19-cv-01975-RS<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT**<br><br>Date: Jan. 23, 2020<br>Time: 1:30 pm<br>Courtroom:  3, 17th Floor<br><br>Hon. Richard Seeborg |

LATHAM&WATKINS LLP US-DOCS\111978156
ATTORNEYS AT LAW
SAN FRANCISCO

CASE NO. 19-CV-01975-RS
DEFENDANTS' REPLY ISO
MOTION TO DISMISS

**TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ................................................................................................................ 1

II.    ARGUMENT ..................................................................................................................... 2

     A.     Plaintiff's Generalized Allegations Do Not Establish That Zogenix
         Made Any False or Misleading Statements .......................................................... 2

         1.     Plaintiff's Falsity Theory Is Based On Conclusory
              Assumptions and Contradicts the RTF Letter ............................................ 2

         2.     Statements Made After the Class Period Do Not Support
              Plaintiff's Fraud-by-Hindsight Falsity Theory ......................................... 6

         3.     Zogenix's Risk Disclosures Were Robust, Not Misleading ................... 10

     B.     Plaintiff's Scienter Allegations Are Insufficient and Make No
         Sense ................................................................................................................. 11

         1.     Zogenix Did Not Gamble On FDA Approval ......................................... 11

         2.     The Reasonable Inferences Do Not Support Scienter ............................. 13

III.   CONCLUSION ................................................................................................................ 15

LATHAM&WATKINS<sub>LLP</sub> US-DOCS\111978156

ATTORNEYS AT LAW
SAN FRANCISCO

i

CASE NO. 19-CV-01975-RS
DEFENDANTS' REPLY ISO
MOTION TO DISMISS

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Asher v. Baxter, Int'l, Inc.*,
377 F.3d 727 (7th Cir. 2004) ........................................................................................... 11

*Brody v. Transitional Hosps. Corp.*,
280 F.3d 997 (9th Cir. 2002) ............................................................................................. 5

*Dougherty v. Esperion Therapeutics, Inc.*,
905 F. 3d 971 (6th Cir. 2018) ........................................................................................... 12

*Flynn v. Sientra, Inc.*,
2016 WL 3360676 (C.D. Cal. June 9, 2016) ................................................................... 11

*Frater v. Hemispherx Biopharma, Inc.*,
996 F. Supp. 2d 335 (E.D. Pa. 2014) ......................................................................... 12, 15

*In re Amylin Pharm., Inc. Sec. Litig.*,
2003 WL 21500525 (S.D. Cal. May 1, 2003) .................................................................... 4

*In re Dynavax Sec. Litig.*,
2018 WL 2554472 (N.D. Cal. June 4, 2018) ..................................................................... 5

*In re Harman Int'l Indus., Inc. Sec. Litig.*,
791 F.3d 90 (D.C. Cir. 2015) ........................................................................................... 11

*In re Intrexon Corp. Sec. Litig.*,
2017 WL 732952 (N.D. Cal. Feb. 24, 2017) ................................................................... 10

*In re MannKind Sec. Actions*,
835 F. Supp. 2d 797 (C.D. Cal. 2011) ............................................................. 4, 9, 10, 15

*In re Nuvelo, Inc. Sec. Litig.*,
668 F. Supp. 2d 1217 (N.D. Cal. 2009) ................................................................... 4, 9, 12

*In re PTC Therapeutics, Inc., Sec. Litig.*,
2017 WL 3705801 (D.N.J. Aug. 28, 2017) ....................................................................... 6

*In re Quality Systems, Inc.*,
865 F.3d 1130 (9th Cir. 2017) ......................................................................................... 11

*In re Regulus Therapeutics Inc. Sec. Litig.*,
2019 WL 4242485 (S.D. Cal. Sep. 5, 2019) ...................................................................... 6

*In re Rigel Pharm. Inc. Sec. Litig.*,
697 F.3d 869 (9th Cir. 2012) ............................................................................................. 5

*In re Viropharma, Inc.*,
2003 WL 1824914 (E.D.Pa. Apr. 7, 2003) ....................................................................... 4

*Kader v. Sarepta Therapeutics, Inc.*,
2016 WL 1337256 (D. Mass. Apr. 5, 2016) ...................................................................... 6

LATHAM&WATKINSᴸᴸᴾ US-DOCS\111978156
ATTORNEYS AT LAW
SAN FRANCISCO

ii

CASE NO. 19-CV-01975-RS
DEFENDANTS' REPLY ISO
MOTION TO DISMISS

*Khoja v. Orexigen Therapeutics, Inc.*,
    899 F.3d 988 (9th Cir. 2018) ........................................................................................................ 4

*Matrixx Initiatives, Inc. v. Siracusano*,
    563 U.S. 27 (2011)........................................................................................................................ 4

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
    540 F.3d 1049 (9th Cir. 2008) .................................................................................................... 14

*Schueneman v. Arena Pharmaceuticals*,
    840 F.3d 698 (9th Cir. 2016) ........................................................................................... 11, 12, 13

*Siracusano v. Matrixx Init., Inc.*,
    585 F.3d 1167 (9th Cir. 2009) .................................................................................................... 11

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)..................................................................................................................... 14

*Tongue v. Sanofi*,
    816 F.3d 199 (2d Cir. 2016)..................................................................................................... 4, 10

*Zaghian v. Farrell*,
    674 F. App'x 718 (9th Cir. 2017) ............................................................................................... 11

**STATUTES**

21 U.S.C. § 355(b)(2) ........................................................................................................................ 3

**REGULATIONS**

21 C.F.R. §§ 312.20-23.................................................................................................................... 4

21 C.F.R. § 314.50 ........................................................................................................................... 4

21 C.F.R. §§ 601.50-51.................................................................................................................... 2

LATHAM&WATKINS<sup>LLP</sup> US-DOCS\111978156
ATTORNEYS AT LAW
SAN FRANCISCO

iii

CASE NO. 19-CV-01975-RS
DEFENDANTS' REPLY ISO
MOTION TO DISMISS

## I.    INTRODUCTION

On February 6, 2019, Zogenix submitted a detailed New Drug Application ("NDA") to the FDA with the hope and expectation that the FDA would accept it for review.  As Zogenix told investors, the NDA included non-clinical studies (studies conducted in animals, not humans) that it believed would permit the FDA's review.  But Zogenix also specifically warned investors of the risk that the FDA might have a different view than the company about what studies would be sufficient for the FDA to accept the NDA for review or to grant approval.  When that risk materialized, and the FDA issued a refusal to file letter ("RTF Letter"), Zogenix suffered a temporary setback in its path toward approval for its treatment for Dravet Syndrome, a form of childhood epilepsy.  The FDA's RTF Letter was equally as unexpected for Zogenix as it was for investors.  Zogenix's failure to predict that the FDA would issue it is not securities fraud.

Plaintiff's opposition brief confirms that his falsity theory is based on the conclusory allegation that Zogenix failed to submit *any* references to existing fenfluramine literature despite knowledge that without such references, there was a high risk the FDA would not accept its NDA submission.  This theory is based on assumptions—not particularized alleged facts.  Plaintiff offers no specific allegations establishing that Zogenix's NDA failed to reference existing literature.  Nor does Plaintiff provide particularized allegations establishing that Zogenix knew (or even suspected) that the FDA wanted Zogenix *to conduct*—not reference—new six- and nine-month chronic toxicity studies before it would accept Zogenix's NDA for filing.  At best, Plaintiff alleges that the FDA's issuance of a RTF Letter is proof that Zogenix must have hidden something from investors.  This is classic fraud-by-hindsight that should be rejected.

Plaintiff's opposition also does not cure his failure to plead a cogent and compelling inference of scienter.  The absence of specific facts showing that Zogenix omitted references to chronic toxicity studies and knew that doing so would create a significant risk of the NDA's rejection is fatal.  But even more compelling is Plaintiff's failure to allege any plausible reason why Zogenix would have omitted references to existing chronic toxicity literature when doing so was effortless, if doing so would create a significant risk of a RTF Letter.  The only logical and compelling inference to be drawn is that Zogenix actually included the references it believed

LATHAM&WATKINSᴸᴸᴾ US-DOCS\111978156
ATTORNEYS AT LAW
SAN FRANCISCO
1
CASE NO. 19-CV-01975-RS
DEFENDANTS' REPLY ISO
MOTION TO DISMISS

would persuade the FDA to accept its NDA based on its prior discussions with the FDA, just as Zogenix told investors.  Because Plaintiff has not pled particularized facts that would establish either falsity or scienter, the Court should grant the motion to dismiss.

## II.    ARGUMENT

### A.    Plaintiff's Generalized Allegations Do Not Establish That Zogenix Made Any False or Misleading Statements

#### 1.    Plaintiff's Falsity Theory Is Based On Conclusory Assumptions and Contradicts the RTF Letter

Plaintiff's opposition brief makes clear that his primary falsity theory is that Zogenix's statements were false because they concealed "from investors significantly heightened risks of a drug's rejection by the FDA."  Dkt. 52 ("Opp.") at 11.  That theory suffers from two fatal flaws.

##### a.    No Allegations Show That Zogenix Failed to Reference Existing Non-Clinical and Other Toxicology Studies

First, Plaintiff's theory is based on the premise that while Zogenix told investors it would rely on the Section 505(b)(2) pathway to FDA approval—which allows drug sponsors to submit references to existing literature in connection with an NDA—Zogenix simply declined to include references to existing non-clinical literature in its NDA application.  Opp. at 2.  That is, Plaintiff alleges Zogenix failed to include *any* references to existing literature at all.  *See, e.g.*, *id.* at 10 ("Defendants' failure to disclose that they had already excluded the fenfluramine literature . . . .") (emphasis omitted); *id.* at 14 n.4 ("Defendants cannot credibly argue that they were unaware of the public literature requirement").  These allegations are both conclusory and wrong.  Dkt. 47 ("Mot.") at 12-15.

There is not a single factual allegation in the Amended Complaint to support the conclusion that Zogenix omitted non-clinical references to public literature in its NDA.[1]  In fact, the FDA's RTF Letter—which Plaintiff relies upon—was not based on the absence of references to existing chronic toxicity literature, but instead based on two separate deficiencies, neither of which has anything to do with references to existing fenfluramine literature:

---

[1]    Indeed, Zogenix's NDA is non-public and confidential, so Plaintiff has no way of knowing what information it did or didn't contain.  Mot. at 14 (citing 21 C.F.R. §§ 601.50-51).

LATHAM&WATKINSLLP US-DOCS\111978156

ATTORNEYS AT LAW
SAN FRANCISCO

2

CASE NO. 19-CV-01975-RS
DEFENDANTS' REPLY ISO
MOTION TO DISMISS

> In the letter, the FDA cited two reasons for the RTF decision: first, certain non-clinical studies were not submitted to allow assessment of the chronic administration of fenfluramine; and, second, the application contained an incorrect version of a clinical dataset, which prevented the completion of the review process that is necessary to support the filing of the NDA.

Ex. 4 (Zogenix Press Release).[2]  Plaintiff ignores the fact that Zogenix submitted a robust non-clinical package, with references to previous use of fenfluramine and new non-clinical studies, including juvenile toxicology studies and genotoxicology studies that it believed would bridge the gap between the previous use of fenfluramine and its proposed use in children.  Ex. 8 at 6 (describing Zogenix's non-clinical submission plan); *see also* Ex. 14 at 5 (May 15, 2019 Company Call Tr.) (explaining that Zogenix conducted "the nonclinical trials or the studies that we felt we had agreement with the FDA on" including "genotoxicology and importantly, juvenile toxicology, which allowed us to really bridge from [previous] non-chronic tox to allow us to start to dose children . . . . *all that was basically laid out in our regulatory documentation*") (emphasis added); Ex. 5 at 7 (Zogenix conducted "the appropriate juvenile toxicologies" for chronic toxicity).

Even if Plaintiff had sufficiently pled facts establishing that Zogenix did not reference existing chronic toxicity studies, Plaintiff's pleading is still deficient because no alleged facts show that Zogenix knew a failure to reference those studies gave rise to a high risk that the FDA would reject its NDA.  Plaintiff's contention rests on its assertion that based on the requirements of Section 505(b)(2), Zogenix must have known that without references to existing literature, there was a high risk that its Section 505(b)(2) NDA would be rejected.  Opp. at 10.  That again misses the point.  Section 505(b)(2) says nothing about what references or studies to include.  Section 505(b)(2) merely permits an applicant to rely on "investigations . . . [that] were not conducted by or for the applicant and for which the applicant has not obtained a right of reference" as part of its showing that the drug is safe and effective (21 U.S.C. § 355(b)(2)); Section 505(b)(2) does not specify any particular studies that are required for this purpose.

---

[2]  Citations to Exhibits 1-7 and 9-13 refer to those appended to the Declaration of Colleen C. Smith, filed October 4, 2019, and available at Docket 47-1.  Citations to Exhibits 8, 14, and 15 refer to those appended to the Reply Declaration of Colleen C. Smith, filed concurrently herewith.

LATHAM&WATKINS^LLP US-DOCS\111978156
ATTORNEYS AT LAW
SAN FRANCISCO

3

CASE NO. 19-CV-01975-RS
DEFENDANTS' REPLY ISO
MOTION TO DISMISS

Indeed, the studies that may be sufficient to support an NDA showing that a particular drug is safe and effective vary depending on the nature of the disease being treated and the drug. Mot. at 5 (citing 21 C.F.R. §§ 312.20-23, 314.50, and explaining "the precise studies depend on the nature of the drug; therefore, applicants are encouraged to discuss their non-clinical and clinical studies with the FDA"). A reasonable investor reading Zogenix's statements regarding its submission of a Section 505(b)(2) NDA would thus understand that there is no fixed set of studies that should be referenced or conducted to ensure a successful application. As a result, there is an ever-present risk that the FDA could require, as happened here, to *conduct* more studies as a condition to an NDA's acceptance. *See Tongue v. Sanofi*, 816 F.3d 199, 211 (2d Cir. 2016) (affirming dismissal of claims and explaining that investors "would fully expect that Defendants and the FDA were engaged in a dialogue . . . about the sufficiency of various aspects of the clinical trials and that inherent in the nature of a dialogue are differing views").

No authority supports Plaintiff's speculative omission theory. In each of Plaintiff's cited cases (Opp. at 10-12), the plaintiff met the PSLRA's exacting pleading standard by specifying, with particularity, information in the company's possession that *directly contradicted* its public statements. *See, e.g.*, *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 43-46 (2011) (plaintiff alleged material omission based on allegations that company received specific reports from medical professionals and researchers of serious adverse events associated with use of drug); *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1014 (9th Cir. 2018) (plaintiff alleged omission of violation of FDA rules that resulted in termination of clinical trial); *In re MannKind Sec. Actions*, 835 F. Supp. 2d 797, 809-10 (C.D. Cal. 2011) (plaintiff alleged affirmative misrepresentation of agreement with FDA); *In re Nuvelo, Inc. Sec. Litig.*, 668 F. Supp. 2d 1217, 1228 (N.D. Cal. 2009) (plaintiff alleged omission of fact that FDA mandated a greater threshold of statistical significance for clinical trials and therefore had greater risk of failure, and of risks that second trial would fail based on results in previous trial); *In re Amylin Pharm., Inc. Sec. Litig.*, 2003 WL 21500525, at *5 (S.D. Cal. May 1, 2003) (plaintiff alleged specific contemporaneous guidance from the FDA that it had "serious concerns about its study designs which could prevent the approval of Symlin"); *In re Viropharma, Inc. Sec. Litig.*, 2003 WL

LATHAM&WATKINS LLP US-DOCS\111978156
ATTORNEYS AT LAW
SAN FRANCISCO
4
CASE NO. 19-CV-01975-RS
DEFENDANTS' REPLY ISO
MOTION TO DISMISS

1824914, at *5-6 (E.D. Pa. Apr. 7, 2003) (plaintiff alleged omission of specific clinical trial results, which contradicted public statements regarding efficacy of the drug and potential market). Plaintiff's allegations do not come close here.

### b. No Allegations Show Zogenix Knew of and Disregarded a Heightened Risk of NDA Rejection

Second, even if Plaintiff had pled specific allegations that Zogenix knew references to the six- and nine-month chronic toxicity studies were required (and omitted), this too would not plead falsity. ***The RTF Letter was not issued based on the failure to include references to these studies.*** Rather, the FDA said Zogenix would be required to submit and ***conduct*** these studies—with the underlying data—not merely reference prior studies from existing literature. Ex. 5 at 4 (explaining that the RTF Letter was issued, in part, because "certain nonclinical studies were not submitted"); *id.* at 6 ("our view [based] on prior verbal interactions and written agreement with [the] agency was that we were not required to complete these nonclinical studies"); *id.* at 9 ("If the studies are required then obviously we'll need to conduct them . . . ."). Zogenix's statements did not create an expectation that new six- and nine-month toxicity studies would be conducted and submitted contemporaneously with the NDA. Ex. 8 at 6 (explaining Zogenix would submit juvenile and genotoxicity studies, and complete additional studies as post-marketing requirements, after submitting its NDA). These statements did not "affirmatively create an impression of a state of affairs that differs in a material way from the one that actually exists" simply because Zogenix did not tell investors that it did not conduct new six- and nine-month chronic toxicity studies for submission with its NDA. *See Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002). Zogenix was not required to disclose every detail of what was, or was not included in its NDA. *See In re Rigel Pharm., Inc. Sec. Litig.*, 697 F.3d 869, 880 n.8 (9th Cir. 2012) ("Rule 10b–5 prohibits only misleading and untrue statements, not statements that are incomplete."); *In re Dynavax Sec. Litig.*, 2018 WL 2554472, at *7 (N.D. Cal. June 4, 2018) ("The FDA approval process necessarily involves a dialogue between the company and the agency and a company has 'no legal obligation to loop the public into each detail of every communication with the FDA.'").

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

US-DOCS\111978156

5

CASE NO. 19-CV-01975-RS
DEFENDANTS' REPLY ISO
MOTION TO DISMISS

Plaintiff does not meaningfully grapple with Defendants' cited cases in which, as here, the plaintiffs did not specify material adverse information that would have alerted the defendant companies of a truly heightened risk of FDA rejection. Opp. at 14 (citing *Kader v. Sarepta Therapeutics, Inc.*, 2016 WL 1337256, at *14 (D. Mass. Apr. 5, 2016); *In re PTC Therapeutics, Inc. Sec. Litig.*, 2017 WL 3705801, at *10-11 (D.N.J. Aug. 28, 2017); *In re Regulus Therapeutics Inc. Sec. Litig.*, 2019 WL 4242485, at *5-6 (S.D. Cal. Sep. 5, 2019)). Even if Zogenix had enjoyed perfect foresight, the risk the FDA would reject its NDA for filing arose from Zogenix's failure to conduct its own new chronic toxicity studies, not from the (purported) lack of references to existing ones (as Plaintiff contends, Opp. at 13-14). No alleged facts establish that Zogenix was on notice of this risk.

### 2. Statements Made After the Class Period Do Not Support Plaintiff's Fraud-by-Hindsight Falsity Theory

Lacking any particularized, contemporaneous alleged facts to support his theory of fraud, Plaintiff argues that Dr. Farr's statements to investors after the FDA had issued its RTF Letter constitute admissions that Zogenix knew all along the FDA would require references to existing toxicity literature. Opp. at 2, 13, 17. Once again, Plaintiff's argument is based on its own mischaracterization of the record.

According to Plaintiff, Dr. Farr's statements support his theory that Zogenix was "going to reference the chronic toxicity . . . literature" from prior studies in support of its NDA, but decided against doing so in light of the strength of Zogenix's clinical data, and amount to an "admission[]" that Zogenix knew all along these studies would be required. Dkt. 42 ("AC") ¶ 67 (emphasis omitted); Opp. at 13 (quoting AC ¶¶ 65-67). That's not what Dr. Farr said and in all events is wrong. Instead, Dr. Farr explained that, based on the history of discussions with the FDA, and the previous studies, Zogenix did not believe *new* chronic toxicity studies were required. *E.g.*, Ex. 14 at 5. As part of a larger discussion regarding confusion surrounding the FDA's RTF Letter, Dr. Farr explained:

> We were going to reference the chronic toxicity from the old Pondimin days, reference it through literature, and then to supplement that with nonclinical trials -- or nonclinical studies, I should say, with genotoxicology and importantly, juvenile

LATHAM&WATKINS LLP US-DOCS\111978156

6

CASE NO. 19-CV-01975-RS
DEFENDANTS' REPLY ISO
MOTION TO DISMISS

ATTORNEYS AT LAW
SAN FRANCISCO

toxicology, which allowed us to really bridge from the non-chronic tox to allow us to start to dose children, and then ultimately to move forward with reproductive toxicology and c[arcino]genicity testing as a post-market required studies. ***So all that was basically laid out in our regulatory documentation.***

*Id.* (emphasis added). Dr. Farr did not say that Zogenix decided not to reference these studies in its initial submission. Read in context, he said the opposite. Before receiving the RTF Letter asking Zogenix to conduct new studies, Zogenix was going to simply reference the existing literature—"all that was basically laid out in our regulatory documentation." *Id.* That is, Dr. Farr was describing what Zogenix planned to, and had done, before receiving the FDA's request that it actually conduct new chronic toxicity studies.

Again assuming Plaintiff were correct (which he isn't) that Zogenix's NDA did not contain references to existing fenfluramine literature, the complaint still does not adequately allege that the omission of those references gave rise to a high risk that the FDA would reject Zogenix's NDA. Plaintiff conveniently ignores Dr. Farr's other statements after the class period in which he further explained that Zogenix believed the other data and references in its NDA submission had adequately addressed the "cardiovascular safety signal," which is the safety issue that had led to Pondimin's withdrawal from the market. Ex. 14 at 5. In particular, Zogenix's clinical data showed that no patient treated with FINTEPLA on a daily basis has developed valvular heart disease or pulmonary hypertension. Mot. at 6 (citing Ex. 2 at 5-7). Dr. Farr also explained that Zogenix believed that conducting new chronic toxicity studies, which had not shown evidence of any cardiac issues for fenfluramine previously, would not add any new information to the NDA. Ex. 14 at 5 ("It's our belief that really conducting chronic toxicity studies are not going to add to our knowledge . . . we've obviously studied it in humans where the safety signal had occurred."). Conducting these studies was unnecessary because the "concern around fenfluramine occurred in a post-market setting [in humans]. It did not occur in any [animal] preclinical studies that were conducted by the sponsor at that time for the Pondimin NDA." *Id.* Based on that, Dr. Farr repeatedly said, "[w]e have conducted what we believe, based upon our FDA correspondence, was the appropriate nonclinical package for the NDA." Ex. 5 at 7 (Apr. 8, 2019 Conf. Call Tr.); Ex. 6 at 4 (May 8, 2019 Earnings Call Tr.).

LATHAM&WATKINS<sup>LLP</sup> US-DOCS\111978156
ATTORNEYS AT LAW
SAN FRANCISCO

7

CASE NO. 19-CV-01975-RS
DEFENDANTS' REPLY ISO
MOTION TO DISMISS

Plaintiff cannot construct a theory of fraud based on purported post-class period "admissions," while ignoring the full context of those statements. That context makes clear that Zogenix submitted a robust package of non-clinical studies, including references to existing literature on chronic toxicity studies, which it believed would be sufficient for the FDA's review. Not one of Dr. Farr's statements supports the conclusion that Zogenix received—and disregarded—guidance from the FDA that Zogenix would need to conduct new six- and nine-month chronic toxicity studies.

Plaintiff's reliance on analyst reports issued after the class period likewise do not support falsity. Specifically, Plaintiff argues that analysts "reported that the NDA in fact did not include the necessary references to the fenfluramine literature." Opp. at 13; *see also* Opp. at 7 (referencing Guggenheim, Ladenburg Thalmann, and Northland Capital Markets analyst reports). These reports say no such thing. Instead, they update investors on Dr. Farr's statements and describe the confusion and uncertainty as to whether Zogenix would need to *conduct* new six- and nine-month chronic toxicity studies, as requested in the RTF Letter. *See* Ex. 12 (Apr. 9, 2019 Northland Rpt.) (noting "the Co. was not directed to provide non-clinical toxicology," but now "the Co. may have to conduct standard ICH 6-month and 9-month chronic toxicology studies") (emphasis omitted). Not one analyst report says that Zogenix did not submit references that it knew or even should have known were required. *See* Exs. 10-12.[3]

The other analyst reports Plaintiff relies on similarly undermine any suggestion that Zogenix had not referenced existing literature in its NDA under Section 505(b)(2), much less that it knew or even should have known that the FDA would request that it conduct new six- and nine-month chronic toxicity studies in order to demonstrate fenfluramine's safety. As later

---

[3] Plaintiff argues that "according to Northland Capital Markets, the FDA told Zogenix in writing not to include new non-clinical studies because the NDA would be referencing the existing fenfluramine literature under Section 505(b)(2)." Opp. at 13-14 n.4 (emphasis omitted). Again, Plaintiff conflates all "non-clinical studies" with specific six- and nine-month chronic toxicity studies. The analysts do not make the same mistake. The Northland report does not say that FDA told Zogenix reference existing literature. The Northland analyst instead notes that the FDA had previously stated that non-clinical toxicity studies would not be required because Zogenix would rely on Section 505(b)(2), and that the FDA's later request that Zogenix *conduct new* chronic toxicity studies was unexpected based on this previous guidance.

LATHAM&WATKINS LLP US-DOCS\111978156
ATTORNEYS AT LAW
SAN FRANCISCO

8

CASE NO. 19-CV-01975-RS
DEFENDANTS' REPLY ISO
MOTION TO DISMISS

explained by the Guggenheim analyst, "[c]hronic tox studies in animals won't capture cardiac issues," which had resulted in the withdrawal of Fen-Phen, making "the ***FDA's current safety concerns seem all the more confusing and bizarre***." Ex. 15 (May 8, 2019 Guggenheim Rpt.) (emphasis altered from original). The reports also noted that Zogenix "has completed comprehensive cardiac monitoring in Fintepla's Phase III studies, and it is reassuring that . . . no signs of cardiac valvular heart disease or pulmonary hypertension were observed in any patient at any time." *Id.*; *see also* Ex. 10 (Apr. 9, 2019 Ladenburg Rpt.) ("these adverse events (AEs) remain undetected in multiple Phase 2 and 3 trials . . . including long-term treatment . . . . in our view, long-term animal toxicity studies are likely to confirm [these] clinical trial results").

Plaintiff's falsity theory remains classic fraud-by-hindsight. The cases Plaintiff cites to assert otherwise do not save his insufficient allegations. Opp. at 17. In those cases, the plaintiffs alleged specific facts, known at the time the statements were made, that directly contradicted the companies' statements. For example, in *Nuvelo*, the plaintiff specifically alleged that at the time the statements were made the defendants did not disclose "an agreement with the FDA that regulatory approval rested on [a clinical trial] achieving a much higher threshold for statistical significance: a p-value of 0.00125." 668 F. Supp. 2d at 1221. That omission created a misimpression regarding the risk that the clinical trial would fail to achieve statistical significance. *Id.* at 1230. Here, Plaintiff fails to allege specific facts that Zogenix knew the FDA would require specific chronic toxicity studies to be conducted, much less that the absence of those studies would increase the risk its NDA would be rejected. Zogenix could not disclose a heightened risk it did not itself appreciate.

Similarly, in *MannKind*, the plaintiff challenged "statements that the FDA had accepted, or blessed, or agreed to the Defendants' bioequivalency methodology." 835 F. Supp. 2d at 809. These statements were "shown to be false by a later revelation demonstrating that the FDA had not, in fact, done any such thing[.]" *Id.* at 809-10. Here, there is no such contradiction. There are no allegations in this case that the FDA told Zogenix to conduct specific chronic toxicity studies, or that Zogenix otherwise knew that the failure to submit those studies created a significant risk that its NDA would not be accepted. There are no allegations in this case that

LATHAM&WATKINS<sup>LLP</sup> US-DOCS\111978156
ATTORNEYS AT LAW
SAN FRANCISCO

9

CASE NO. 19-CV-01975-RS
DEFENDANTS' REPLY ISO
MOTION TO DISMISS

Zogenix misrepresented the particular studies it planned to submit or reference.  And there are no allegations that Zogenix failed to disclose the risk (known by everyone) that the FDA may impose additional requirements.  Mot. at 8 (citing Ex. 2).

At bottom, Plaintiff relies on hindsight to assume that Zogenix must have known the risk the FDA would refuse to file its NDA was higher than Zogenix let on.  This is exactly what the PSLRA prohibits.  *See Tongue*, 816 F.3d at 211, 214 (explaining investors understand the FDA approval process is complex and "statements were not misleading simply because the FDA disagreed with Defendants' interpretation of the data"); *In re Intrexon Corp. Sec. Litig.*, 2017 WL 732952, at *4 (N.D. Cal. Feb. 24, 2017) (Seeborg, J.) (rejecting "a fraud-by-hindsight argument," reasoning "plaintiff cannot show that a prior statement was false or misleading merely by pointing to the market reaction upon a subsequent disclosure of information").

### 3.    Zogenix's Risk Disclosures Were Robust, Not Misleading

Lastly, Plaintiff argues Zogenix's risk disclosures were themselves misleading because they were too general and the warned of risk "had already materialized."  Opp. at 15; Mot., App'x A Stmt. 7.  But the level of specificity of Zogenix's risk warnings is irrelevant to whether those statements were false or misleading.  *See* Mot. at 11-14.  Plaintiff is not challenging whether the risk warnings were specific enough to trigger the PSLRA's safe harbor, but rather the falsity of the statements themselves.  Plaintiffs' cited cases regarding the application of the safe harbor for forward-looking statements (Opp. at 16) are thus entirely inapplicable here.

More importantly, Zogenix's risk disclosures were not misleading because the risks warned of *had not materialized*.  The FDA had not yet issued its RTF Letter or otherwise told Zogenix that it submission was incomplete.  Zogenix accordingly warned investors of the same risks Zogenix appreciated—namely, that the requirements for its Section 505(b)(2) NDA may not be as expected and that the FDA may require Zogenix to perform new studies.  Mot. at 13-14*; see also Asher v. Baxter, Int'l, Inc.*, 377 F.3d 727, 734 (7th Cir. 2004) (explaining that in risk disclosures "issuers need not anticipate all sources of deviations from expectations").

In contrast, the cases Plaintiff cites on this point each involved specific allegations that the risks warned of had already materialized.  Opp. at 16-17 (citing *Zaghian v. Farrell*, 675 F.

LATHAM&WATKINSᴸᴸᴾ US-DOCS\111978156
ATTORNEYS AT LAW
SAN FRANCISCO

10

CASE NO. 19-CV-01975-RS
DEFENDANTS' REPLY ISO
MOTION TO DISMISS

App'x 718, 720 (9th Cir. 2017) (plaintiff alleged that defendants knew, but failed to disclose product would likely fail based on independent study it had commissioned); *Siracusano v. Matrixx Init., Inc.*, 585 F.3d 1167, 1181 (9th Cir. 2009) (finding plaintiff "alleges facts sufficient for a jury to find that Clarot was aware of the potential anosmia problem" at the time of the disclosure); *Flynn v. Sientra, Inc.*, 2016 WL 3360676, at *2, *10 (C.D. Cal. June 9, 2016) (finding risk disclosures regarding potential product contamination of breast implants insufficient where an internal investigation previously "confirmed the presence of particle contamination"); *In re Harman Int'l Indus., Inc. Sec. Litig.*, 791 F.3d 90, 104 (D.C. Cir. 2015) (explaining "when the April conference call was made, the threat of serious obsolescence was materializing")).[4]

Zogenix did not know what the FDA would do with its NDA application. Given that uncertainty, Zogenix accurately conveyed the risks to investors. Mot., App'x A, Stmt. 7. No more was required (or possible).

### B.    Plaintiff's Scienter Allegations Are Insufficient and Make No Sense

#### 1.    Zogenix Did Not Gamble On FDA Approval

Plaintiff's core scienter theory is that Zogenix placed a reckless bet that the FDA would approve its NDA without references to public literature regarding fenfluramine. Opp. at 19. With the perfect clarity of hindsight, Plaintiff argues that Zogenix did not include references to existing fenfluramine literature in the NDA as permitted under Section 505(b)(2), and as a result should have known there was a significant, concealed risk that the FDA would reject it. Opp. at 20-21. But this theory is based on the same incorrect premise as Plaintiff's falsity allegations, which assume (without basis) that Zogenix did not submit references to existing toxicology literature in its NDA submission. This assumption is wrong. Zogenix both conducted and

---

[4]    Plaintiff picks language from other cases that concern affirmative representations of present facts, not the materialization of known risk. Opp. at 15-16. Those cases are easily distinguishable. *In re Quality Systems, Inc.*, stands for the unremarkable proposition that no risk disclosures will save misrepresentation of current fact. 865 F.3d 1130, 1148 (9th Cir. 2017) ("Because Defendants made materially false or misleading non-forward-looking statements about the state of QSI's sales pipeline, virtually no cautionary language short of an outright admission . . . would have been adequate."). Similarly, in *Schueneman v. Arena Pharmaceuticals, Inc.*, the court held allegations sufficient to plead falsity where they identified specific, contemporaneous communications with the FDA reflecting knowledge of present facts contradicting the company's risk warnings. 840 F.3d 698, 708-09 (9th Cir. 2016) .

LATHAM&WATKINSLLP  US-DOCS\111978156
ATTORNEYS AT LAW
SAN FRANCISCO

CASE NO. 19-CV-01975-RS
DEFENDANTS' REPLY ISO
MOTION TO DISMISS

submitted references in its NDA to toxicology studies that it believed were necessary. *See* Ex. 8 at 6 (referencing genotoxicology and juvenile toxicology); Ex. 14 at 5 (discussing references "laid out in [] regulatory documentation"). Zogenix's failure to predict how the FDA would evaluate its NDA submission is not securities fraud.

The cases Plaintiff cites do not support a different conclusion. In each of those cases, the plaintiffs alleged that the defendant companies misrepresented or failed to disclose specific feedback from the FDA bearing on potential approval. *See* Opp. at 22-23 (citing *Dougherty v. Esperion Therapeutics, Inc.*, 905 F.3d 971, 982 (6th Cir. 2018) (plaintiffs alleged that what was said by the FDA in a critical meeting "was inconsistent with what Esperion told its investors"); *Frater v. Hemispherx Biopharma, Inc.*, 996 F. Supp. 2d 335, 346, 349-50 (E.D. Pa. 2014) (alleging that defendants omitted negative feedback from the FDA, including "methodological errors" and "faulty statistical analysis," based on FDA's briefing package and comments made by the FDA at an advisory committee meeting); *Nuvelo*, 668 F. Supp. 2d at 1221, 1230 (alleging defendants misled investors by failing to divulge an agreement with the FDA that regulatory approval rested on the clinical trial "achieving a much higher threshold for statistical significance"). *Schueneman v. Arena Pharmaceuticals*, which Plaintiff cites, illustrates the holes in Plaintiff's scienter theory. 840 F.3d 698 (9th Cir. 2016). There, the Ninth Circuit explained that it was "quite clear" the company understood the FDA did not agree with its interpretation of the study, where FDA documents noted that Arena "'was made aware of [the FDA's] concerns' and was asked to 'defend continuation' of the clinical testing in light of the 'nonclinical tumor/cancer data.'" *Id.* at 708 (emphasis omitted). The Ninth Circuit there rejected an inference that there was merely a good faith dispute about the data, where the company affirmatively represented "there was no controversy [] because all the data was favorable." *Id.* at 709. Here, Plaintiff does not allege that there was a disagreement with the FDA about whether to include the specific toxicity studies requested in the RTF Letter, or that the FDA ever even suggested to Zogenix that references to six- and nine-month chronic toxicity studies were required. Plaintiff offers nothing that contradicts Zogenix's view that based "on prior verbal interactions and written agreement with [the FDA] that we were not required to complete these

nonclinical studies for the NDA submission." Ex. 5 at 6; *id.* at 9 (explaining Zogenix "reviewed [its] interactions [with the FDA] and reviewed the minutes, [and] there have been no requirements to conduct these chronic toxicity studies"); Ex. 6 at 4 ("As we said at the time we announced receipt of the RTF letter, we did not believe these studies were required for the NDA submission based on our assessment of prior verbal and written interactions with the agency.").

Nor it is enough to suggest—as Plaintiff does—that the FDA's ultimate rejection of Zogenix's NDA is proof positive that Zogenix must have disregarded the FDA's guidance. Opp. at 19-20 (arguing that "the FDA's immediate rejection of the NDA evidences" the company's disregard of the FDA's safety concerns). This logical leap is supported by no specific allegations. This argument also completely disregards the fact that the FDA's decision to reject Zogenix's NDA was also based on Zogenix's inadvertent submission of the wrong clinical data set. Exs. 4-5. While Plaintiff wishes to simply ignore this inconvenient fact (Opp. at 7 n.2), it can't. The FDA did not reject Zogenix's NDA for a failure to comply with Section 505(b)(2), or submit references to particular studies. Further, Zogenix's submission of the incorrect clinical data—an error that Plaintiff admits was not the product of fraud (Opp. at 7 n.2)—is itself a sufficient basis for the FDA's decision not to accept the NDA for review. It is entirely possible that absent this deficiency in its NDA, the FDA could have requested that Zogenix conduct the additional chronic toxicity studies as a post-marketing requirement, as Zogenix planned to do for other studies. Ex. 8 at 6 ("FDA has agreed that the required reproductive and developmental toxicity and carcinogenicity studies can be run as post-marketing commitments.").

### 2.  The Reasonable Inferences Do Not Support Scienter

Plaintiff also argues that the Court should disregard competing, nonfraudulent inferences, asserting that the reasons why Zogenix may not have submitted references to available literature in its NDA do not matter. Opp. at 24. Yet the law requires courts evaluating scienter allegations to weigh the inferences and apply reason. The court must determine whether the inference of scienter is "more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1066 (9th Cir. 2008) (internal quotation marks and

LATHAM&WATKINS┴┴┴ US-DOCS\111978156
ATTORNEYS AT LAW
SAN FRANCISCO                                                        13

CASE NO. 19-CV-01975-RS
DEFENDANTS' REPLY ISO
MOTION TO DISMISS

citation omitted). Even a plausible inference requires some basis in logic. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007) ("A complaint will survive . . . only if a *reasonable person* would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged.") (emphasis added). Here, Plaintiff's manufactured fraud theory is far outweighed by the competing, nonfraudulent inferences.

*First*, Plaintiff has no answer for the fact that its scienter theory rests on the implausible notion that Zogenix would gamble on the outcome of its NDA with no conceivable reason for doing so. Opp. at 19-20. Rather than point to any logical inference, Plaintiff claims that "if Defendants were correct, then their argument would prevail in every single instance a drug company is accused of committing securities fraud." Opp. at 22. That too is wrong. Zogenix is not asserting that a drug company can never "spend time and money on an NDA and still be held to have violated Section 10(b) and Rule 10b-5, either intentionally or with deliberate recklessness." *Id.* Zogenix's argument is simply that Plaintiff must allege with particularity facts supporting an inference that Zogenix knew of a risk that its NDA would be rejected and chose to omit the references anyway. Plaintiff has not met this burden.

On these facts, it makes no sense for Zogenix to omit references to publicly available literature it knew were necessary. If, as Plaintiff claims, Zogenix "knew about the public literature," "had access to it," and even considered referencing it (Opp. at 19), why would Zogenix omit that literature from its NDA if it knew there was a high risk the NDA would be rejected without it? Plaintiff does not contend that it would have been difficult or costly for Zogenix to add simple references to publicly available literature. Nor would there be any reason for Zogenix to exclude such references to avoid association with fenfluramine, as Plaintiff suggests. Opp. at 24. Zogenix *did include* references to fenfluramine studies and, of course, the FDA was already aware of fenfluramine's history. Ex. 14 at 5 (explaining references and studies that "allowed [Zogenix] to really bridge from the non-chronic tox to allow us to start to dose children . . . . all that was basically laid out in our regulatory documentation"). Courts regularly reject such improbable theories of reckless or intentional conduct. *See* Mot. at 22-23 (collecting cases). Plaintiff's own cases underscore this point, as each of those plaintiffs alleged specific

LATHAM&WATKINS<sup>LLP</sup> US-DOCS\111978156
ATTORNEYS AT LAW
SAN FRANCISCO

14

CASE NO. 19-CV-01975-RS
DEFENDANTS' REPLY ISO
MOTION TO DISMISS

motives supporting an inference of scienter. Opp. at 20 (citing *MannKind*, 835 F. Supp. 2d at 813 (alleging defendants' "short-term need to keep their stock price above $6.50 per share," which supported an inference of scienter); *Frater*, 996 F. Supp. 2d at 350 (alleging "personal incentives" and that company was "sufficiently short on cash . . . heightening its need for a lucrative stock sale")).

*Second*, Zogenix is not "blam[ing] the FDA," as Plaintiff asserts. Opp. at 21. Plaintiff's alleged facts allow for the possibility that Zogenix and the FDA discussed numerous aspects of Zogenix's non-clinical program and its reliance on Section 505(b)(2), but never discussed whether Zogenix would submit specific six- and nine-month mice and rat chronic toxicity studies. The far more compelling and benign inference here is that Zogenix had a good faith belief that references to or conduct of those studies was not required. As Dr. Farr later explained, the six- and nine-month toxicity studies were not included in the original NDA because Zogenix believed they would not add anything to the analysis of whether fenfluramine was safe and effective. Ex. 14 at 5 (noting cardiac issues previously observed with fenfluramine were not observed in chronic toxicity studies). Zogenix therefore reasonably believed those studies were not required and there was no risk that the FDA would reject the NDA for not including them. Plaintiff has no answer to this logical and compelling non-fraudulent inference.[5]

## III.    CONCLUSION

Zogenix and the other Defendants respectfully request that the Court grant the motion to dismiss the Amended Complaint.

---

[5] Plaintiff seeks to avoid dismissal on scienter grounds by arguing that Zogenix is in possession of the complete FDA record yet failed to provide support for the nonfraudulent inference that the FDA did not instruct Zogenix to submit the specific six- and nine-month chronic toxicity studies. Opp. at 21; *see also id.* at 19 ("Defendants do not claim that the FDA gave any green-light to drop the fenfluramine literature"). Plaintiff knows that Defendants hands are tied at the motion to dismiss stage, and that the Court can only consider the allegations in the complaint and limited documents incorporated by reference or subject to judicial notice. More importantly, it is *Plaintiff's burden* to plead a strong inference of scienter with the particularity required by the PSLRA, not Zogenix's burden to prove Plaintiff's conclusory assertions definitively wrong. Plaintiff has not met this standard.

LATHAM&WATKINSᴸᴸᴾ US-DOCS\111978156
ATTORNEYS AT LAW
SAN FRANCISCO

15

CASE NO. 19-CV-01975-RS
DEFENDANTS' REPLY ISO
MOTION TO DISMISS

Dated:  December 10, 2019

Respectfully submitted,

LATHAM & WATKINS LLP

By */s/  Colleen C. Smith*
    Colleen C. Smith

*Attorneys for Defendants Zogenix, Inc.,
Stephen J. Farr, and Michael P. Smith*

LATHAM&WATKINS LLP US-DOCS\111978156
ATTORNEYS AT LAW
SAN FRANCISCO

16

CASE NO. 19-CV-01975-RS
DEFENDANTS' REPLY ISO
MOTION TO DISMISS